IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STEVEN GAUDETTE,

Plaintiff,

v.

ALEGIS GROUP LIMITED
PARTNERSHIP AND SHERMAN
ACQUISITION LIMITED
PARTNERSHIP,

Defendants

Civil Action No. CV04-12645 JLT

**SHERMAN ACQUISITION'S
OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND CROSS-MOTION
FOR SUMMARY JUDGMENT**

## INTRODUCTION

Plaintiff Steven Gaudette ("Plaintiff"), moves for partial summary judgment against Defendant  Sherman Acquisition, L.P. ("Sherman") for alleged violations of the Fair Debt Collections Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA") in connection with alleged collection attempts and credit reporting in regards to a credit card debt that Plaintiff created.  As an initial matter, the parties have not begun the discovery process, and consequently Plaintiff is unable to establish his claims.  Under Fed. R. Civ. P. 56(f), this court should deny Plaintiff's motion and allow depositions to be taken and discovery to proceed.

Further, Plaintiff's Motion is not only premature, but it is also without merit.  Plaintiff's claims must fail because Sherman has not violated either the FCRA or the FDCPA.  As required by law, Sherman reported the debt as "disputed" within a reasonable time and verified Plaintiff's debt.  Also, Plaintiff fails to properly allege certain requirements necessary to invoke the FCRA. Accordingly, Sherman respectfully requests that this Court deny Plaintiff's motion, and enter Judgment on each of Plaintiff's claims in favor of Sherman.

Additionally, although the present facts are insufficient to support summary judgment in favor of Plaintiff, the lack of facts presented by Plaintiff, in combination with the affidavit of Sherman's representative are sufficient to support summary judgment in favor of Sherman.

## STATEMENT OF FACTS

1.     Plaintiff applied for a Visa Gold credit card from his original creditor, Providian Financial Corp., on or about May 12, 2000.  (Affidavit of Kevin Branigan ("Branigan Aff.")), ¶ 3, Exhibit "A," credit card application).

2.     Through his use of that card, Plaintiff accrued debt in the amount of approximately $1,892 which has not been paid.  (Branigan Aff., ¶4)

3.     Providian sold Plaintiff's debt to Sherman on or about March 24, 2004. (Branigan Aff., ¶5)

4.     Sherman subsequently reported Plaintiff's debt to a credit reporting agency on or about April 21, 2004.  (Branigan Aff., ¶6)

5.     Plaintiff thereafter asserted that he "disputed" the debt in a letter received by Sherman on or about August 11, 2004, contrary to the evidence.  Plaintiff claimed that his account with Providian was not his account.  (See Exh. "B," to Plaintiff's Complaint).

6.     However, Defendant Sherman is in possession of Plaintiff's credit card application showing his signature.  (Branigan Aff., ¶ 3, Exhibit "A," credit card application).

7.     Nevertheless, on or about October 21, 2004, Sherman reported to the credit reporting agencies that Plaintiff's debt was in dispute.  (Branigan Aff., ¶7).

8.     Plaintiff has never disputed the amount owing to Sherman, but has disputed only that the account in question was his, which is invalidated by the credit card application attached to the Affidavit of Mr. Branigan. ("Branigan Aff.).

## I.    <u>SUMMARY JUDGMENT STANDARD</u>.

Fed. R. Civ. P. 56(c) provides that a district court shall grant summary judgment

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law.

A material fact is a fact that might affect the outcome of the case. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).   A genuine issue of fact exists if a reasonable fact-finder could find for the nonmoving party. <u>Id.</u>   "A summary judgment, interlocutory in nature, may be rendered on the issue of liability alone [even though] there is a genuine issue as to the amount of damages." Fed. R. Civ. P. 56(c).

When considering whether to grant a motion for summary judgment, this court must view the evidence "in the light most favorable to the nonmoving party." <u>AgriStor Leasing v. Farrow</u>, 826 F.2d 732, 734 (8th Cir. 1987).  The court's function is not to decide issues of fact but solely to determine whether any real issue exists.  <u>See</u> <u>Carroll v. Gulf Ins. Co.</u>, 886 F.2d 1071, 1074 (8th Cir. 1989) (holding that "a [district] court errs when, in deciding a summary judgment motion, it takes it upon itself to weigh conflicting evidence and to resolve the issue based on the evidence").

The parties have not yet engaged in discovery, and there are numerous issues for a finder of fact to consider.  Accordingly, the evidence gathered to date is insufficient to support Plaintiff's summary judgment.  However, the lack of evidence and the applicable legal principles are sufficient to show that Sherman is entitled to Summary Judgment on the Plaintiff's claims as a matter of law.

## II.     PLAINTIFF'S SUMMARY JUDGMENT IS PREMATURE AS DISCOVERY HAS NOT YET COMMENCED.

Discovery has not yet commenced and no depositions have been taken, yet Plaintiff brings his Summary Judgment Motion, making self-serving allegations, wholly unsupported by any evidence. Fed. R. Civ. P. 56(f) permits a court to deny summary judgment where a party cannot oppose the motion for want of affidavits, testimony or discovery. Sherman must be allowed to take Plaintiff's deposition and receive his documents, consistent with this Court's Discovery Order dated February 4, 2005. In fact, the Plaintiff and Defendant have each recently served the other with document requests, the deadline for responding to which does not expire for several weeks. (Counsel Aff., ¶3).

Moreover, although Sherman believes it is entitled to summary judgment as a matter of law based upon the evidence currently before the court, there are defenses that cannot be fully established prior to completion of the discovery stage that would provide for summary judgment against Plaintiff. For instance, Plaintiff cannot show that any of the credit reporting agencies properly notified Sherman that the debt was disputed within five (5) business days of their receipt of the dispute, as is required by 15 U.S.C. § 1681i(a)(2)(a). In other words, Plaintiff's dispute notification was lacking, and discovery needs to be conducted.

Furthermore, Plaintiff is alleging that Sherman maliciously and willfully violated the FCRA and FDCPA, but he cannot show malicious, intentional or willful conduct without any evidence. The parties must complete discovery in order to properly litigate this issue.

Finally, Plaintiff must establish damages, which without discovery, will not be possible. Plaintiff alleges in his complaint that he applied for two (2) loans and was denied credit solely because Defendants allegedly reported bad debt to the credit reporting agencies. However, a full review of a complete credit history of Plaintiff is necessary, considering that the letters he

received rejecting his request for credit set forth that there were reasons for the denial of credit.

**Complaint, Exs. H and I.**

### III.  PLAINTIFF HAS FAILED TO ESTABLISH THAT SHERMAN VIOLATED THE FCRA.

In a FCRA case, "In order to survive summary judgment, the Plaintiffs must show that they contacted the consumer reporting agency to report a dispute." See Harold v. Bank of America, Court File No. 02-1844 (D. Minn. 2004) (citing to 15 U.S.C. § 1681i(a)(1)(a)) (annexed to Special Affidavit of Counsel Authenticating Documents ("Counsel Aff."), Exhibit 1.) The Plaintiff must then show that the furnisher of credit information was properly notified by the consumer reporting agency. Id. (citing 15 U.S.C. § 1681i(a)(2)(a)). There must then be a determination as to whether or not the furnisher complied with the requirements of 15 U.S.C. § 1681s-2(b). Thus, for Plaintiff to prevail on his motion, he must necessarily show that he properly disputed the account with a credit reporting agency, that the credit reporting agency properly notified Sherman, and that there is no question of material fact as to Sherman's alleged non-compliance. Conversely, all Sherman must do is illustrate that any of the above steps have not been proven by Plaintiff and it is entitled to summary judgment. For purposes of this motion, Sherman does not contest that Plaintiff disputed the account with the consumer reporting agencies.

### A.  Plaintiff has not alleged that Sherman was properly notified of the dispute by the credit reporting agency.

Plaintiff alleges that Sherman violated 15 U.S.C. § 1681s-2 for inaccurately furnishing information to a credit reporting agency "it knows or consciously avoids knowing that the information is inaccurate." 15 U.S.C. § 1681s-2(b)(2) triggers a thirty (30) day clock for furnishers of information, such as Defendants, to investigate and respond to a consumer's

dispute. See 15 U.S.C. § 1681(a)(1) (allotting a thirty (30) day period for consumer reporting agencies to complete investigations). The furnishers of information, however, are only bound by this deadline *after* they have received notice from the credit reporting agency of the consumer's dispute. See 15 U.S.C. § 1681s-2(b)(1); Young v. Equifax Credit Info. Svcs. Inc. 294 F.3d 631, 639 (5th Cir. 2003). Additionally, such notice must be provided within 5 business days from the date the credit reporting agency received the notice of dispute. Therefore, not only must the Plaintiff show that he reported a dispute to Equifax, but he must also show that Defendants were properly notified by Equifax of the dispute. Plaintiff is unable to show that this notification occurred based upon the limited evidence provided to date. Sherman received three (3) dispute notifications from the credit reporting agencies, which merely set forth the following disputes: "Claims inaccurate information" and "Not his/hers." In each instance, Sherman verified its reporting. (Branigan Aff., ¶ 8).

Conversely, Plaintiff's inability to set forth that Sherman was notified properly by a consumer reporting agency is grounds to enter summary judgment in favor of Sherman. See Harold v. Bank of America (granting furnisher's motion for summary judgment due to consumer's failure to illustrate that the furnisher was provided with proper notification of the dispute).

**B.     Defendant Sherman conducted a reasonable investigation.**

Even if Plaintiff could somehow illustrate that Sherman received the proper notice from a consumer reporting agency, there is no dispute that Sherman conducted a reasonable investigation of Plaintiff's unsupported dispute.

The statute requires that upon receipt of notice from a credit reporting agency, furnishers must: (1) investigate the disputed information; (2) review all relevant information provided by

the agency; (3) report the results of the investigation to the agency; and (4) report conclusions that the information was incomplete or inaccurate to other agencies to which the furnishers provided information. See 15 U.S.C. § 1681s-2(b)(1). While the FCRA does not specify the type of investigation required, courts presented with this issue have held that § 1681s-2(b)(1) compels furnishers "to conduct a reasonable investigation of their records to determine whether the disputed information can be verified." Johnson v. MBNA Am. Bank, N.A., 357 F.3d 426, 431 (4th Cir. 2004); Malm v. Household Bank (SB), N.A., 2004 WL 1559370 (D. Minn. 2004) (granting summary judgment to furnisher of credit information upon a finding that the furnisher's investigation was reasonable given the type of dispute received) (Counsel Aff., as Exhibit 2).

Sherman's investigation under § 1681s-2(b) was reasonable given the cursory notice it received from Plaintiff concerning his dispute. The court in Johnson held that § 1681s-2(b)(1) requires furnishers to investigate disputes only after receiving *adequate* notice. 357 F.3d at 431; see also Young v. Equifax Credit Info. Servs., Inc., 294 F.3d 631, 640-41 (5th Cir. 2002). In Malm, the consumer had reason to believe that his ex-wife had signed his name on a credit card application. Malm, 2004 WL at *1. However, rather than inform the consumer reporting agencies of this, the consumer in Malm merely disputed the account as not being his. Furthermore, when the credit reporting agency notified Sherman of the dispute, it only listed "Not his/hers. Provide complete ID." Id. at *5. The Malm court accordingly held that in light of such dispute, a review by the furnisher of its file was all that was required and was reasonable. Id. at *5.

In the instant matter, Plaintiff made such disputes as "This is not may account.; I do not have an open account with this company. Please remove this from my credit report." However,

as the application indicates, the account reported by Sherman was indeed Plaintiff's. Furthermore, the dispute notices forwarded to Sherman merely set forth that Plaintiff disputed the account as "Not his/hers" and "Claims inaccurate information." As the <u>Malm</u> case sets forth, this type of dispute does not require Sherman to conduct anything more than a review of its files.

Furthermore, in light of the fact that Plaintiff did indeed sign up for the credit card, any dispute that a consumer reporting agency may have forwarded to Sherman could not have required Sherman to do any more than review its documents and confirm the information as accurate. As discussed, Plaintiff simply reported that the debt was not his debt. This simplified explanation of the dispute does not require anything more than the investigation that Sherman performed considering that no information could possibly have been located to verify Plaintiff's story; rather all that could have been and was located is a copy of a credit card application signed by Plaintiff.

The FCRA was enacted with the following principles in mind:

(1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system. (2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers. (3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers. (4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681. Plaintiff's demand to have a valid account removed from his credit report offends the underlying purpose of the FCRA and would prevent future creditors of Plaintiff from receiving an accurate picture of his credit worthiness.

In light of the above, Plaintiff's cross-motion for summary judgment must be denied. Conversely, Defendant Sherman's motion for summary judgment must be granted as to Counts I, II, III, V, VI and VII, as they allege violations of the FCRA, as its review of Plaintiff's dispute was reasonable given the nature of his dispute, which turns out to be blatantly false.

### C. Plaintiff cannot show that Defendant Sherman "maliciously and willfully" violated the FCRA or that he was damaged.

Plaintiff alleges in his Complaint that Defendant Sherman knowingly and willfully violated the FCRA. However, he did not allege that Defendant Sherman negligently violated the Act, a much lower standard.[1] To prove the higher standard of knowing and willful, Plaintiff must present evidence and facts showing this to be the case. A plaintiff asserting a violation of the FCRA must "provide some evidence from which a reasonable fact finder could conclude that he suffered actual damages as a result of defendant's actions in order to survive summary judgment." McMillan v. Experian, 170 F. Supp.2d 278, 284 (D. Conn. 2001). However, Plaintiff cannot present any evidence to prove his allegation. Again, Plaintiff has not conducted discovery to support his motion for summary judgment.

Moreover, Plaintiff claims that he was damaged as he was unable to obtain credit. This argument fails for two (2) reasons. First, the debt was valid, was (and is) the Plaintiff's, and was properly reported. Further, Plaintiff attached two (2) credit rejections to his Complaint which cite several reasons for the denial of credit. Complaint, Exs. H and I. However, even a cursory examination of the "rejection" letter establishes that the basis was not caused by Sherman. The rejection from Digital Federal Credit Union informed Plaintiff that he was being rejected due to "Escalating Debt[,] Excessive amount of unsecured debt[, and] Garnishment, attachment,

---

[1] Regardless, Sherman's acts were not negligent.

foreclosure, repossession, collection action, or judgment." The rejection from Bank of America informed Plaintiff that he was being rejected due to "credit obligations not paid as agreed[,] serious delinquency[,] too many recently opened accounts with balances." As such, Plaintiff cannot possibly prove, even with discovery, that Sherman's entry on his credit report, even if it was erroneous (which Sherman denies), caused him to sustain harm or damages. Plaintiff will have to provide full copies of his credit reports and un-redacted, self-serving copies of his credit reports where he restricts access to pertinent information which he has annexed to the Complaint.

Furthermore, because the debt is valid, any damages, which Defendant Sherman denies, must be set-off against the legitimate debt, which is approximately $1,892.

## D.    Sherman is entitled to Summary Judgment of Plaintiff's FCRA claim.

As set forth above, Sherman is entitled to summary judgment of Plaintiff's FCRA claim for two (2) reasons: First, Plaintiff has and will be unable to present any facts to indicate that Sherman received the proper notice as required by the FCRA. The Plaintiff must show that the furnisher of credit information was properly notified by the consumer reporting agency, Young v. Equifax Credit Info. Svcs. Inc. 294 F.3d 631, 639 (5th Cir. 2003); Harold v. Bank of America, 15 U.S.C. § 1681i(a)(2)(a). Next, Plaintiff has not established or alleged that Sherman's investigation of Plaintiff's dispute was not reasonable in light of the dispute received.

In the Harold case, the court granted summary judgment in favor of the furnisher of credit information as the Plaintiff had "failed to put forth evidence that the consumer reporting agencies notified the [furnisher] of the dispute." In the instant matter, Plaintiff has failed to produce any evidence to indicate that Sherman received a timely and proper notification of Plaintiff's dispute.

Still further, in granting summary judgment for the furnisher of information, the court in Malm held that in cases in which the furnisher receives only limited dispute information (ie.

"Not his/hers. Provide complete ID"), a reasonable investigation consists of nothing more than the furnisher reviewing its files. <u>Malm v. Household Bank (SB), N.A.</u>, 2004 WL 1559370 (D. Minn. 2004). In the present matter, the dispute notices provided by the consumer reporting agencies to Sherman merely set forth "Not his/hers" and "Claims inaccurate information." Accordingly, in light of the "cursory notice it received concerning Plaintiff's dispute" Sherman's verification of its entries complied with the investigation requirement of the FCRA. <u>See Malm</u>, 2004 WL at *5.

Accordingly, Sherman is entitled to summary judgment on each of the FCRA claims of Plaintiff.

## III.   <u>PLAINTIFF HAS NOT SHOWN THAT SHERMAN VIOLATED THE FDCPA.</u>

Plaintiff alleges that Sherman has violated 15 U.S.C. §§ 1692e(2)(A), 1692e(10), and 1692e(8), which provide that,

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> ******
>
> (2) The false representation of - (A) the character, amount, or legal status of any debt;
>
> ******
>
> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.
>
> ******
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(Citation omitted).

However, for the reasons stated below, these claims, too, will fail, and in any event, there are genuine issues of fact in dispute and a finding of Summary Judgment is thus improper.

### A.    Sherman is not a debt collector.

In the instant action, it can hardly be argued that Sherman is a debt collector; rather, Sherman is a creditor. A plain reading of the FDCPA reveals that a creditor is

> any person who offers or extends credit creating a debt or to whom a debt is owed, but such **term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.**

15 U.S.C. § 1692a(4). [Emphasis added]. Notably, although Sherman did purchase the account after it went into default, Plaintiff has failed to produce any facts evidencing that Sherman attempted to collect Plaintiff's debt. Absent an attempt to collect on the debt, Sherman was not a debt collector in the instant matter and cannot be held liable for violation of the FDCPA.

### B.    Plaintiff has failed to allege that the debt was a consumer debt.

"A threshold requirement for application of the **FDCPA** is that the prohibited practices are used in an attempt to collect a 'debt' as defined by the Act." Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1167 (3rd Cir. 1987); Cederstrand v. Landberg, 933 F.Supp. 804, 806 (D. Minn. 1996). In another case, the Court stated that "Plaintiff's Complaint fails to allege that defendant was attempting to collect a 'debt' as defined by the FDCPA. There is no allegation in the Complaint that plaintiff's debt resulted from a 'transaction.'" *See* Arnold v. Truemper, 833 F.Supp. 678, 686 (N.D.Ill.1993) (dismissing for failure to state a claim a complaint which failed to allege that the debt arose out of a transaction; complaint did not allege facts showing that the

"debt" was covered by the FDCPA).  A complaint under the FDCPA which fails to allege an offer or extension of credit fails to state a claim under the FDCPA. <u>Zimmerman</u>, 834 F.2d at 1168-69.

In the instant action, although Plaintiff alleges that he is a consumer, he fails to allege in the Complaint or otherwise that the debt at issue was one incurred "primarily for personal, family, or household purposes" as required by 15 U.S.C. § 1692a(5). <u>Cederstrand</u>, 933 F. Supp. at 806.  Notably, Plaintiff asserts only that the underlying debt is a consumer debt in his brief in support of his motion for summary judgment.  However, Plaintiff fails to support that with any evidence.  Plaintiff merely states that because it was his Providian Bank credit card and it appeared on his credit report, it therefore is a consumer debt.  However, Plaintiff's reasoning is devoid of logic and fails to account for the possibility that a consumer might purchase business supplies or incur commercial debt on a consumer credit card.  In fact, there is no FDCPA claims in instances where a consumer purchases commercial equipment on a consumer credit card, even if the collection notices are sent to the consumer's home.  <u>Holman v. West Valley Collection Services, Inc.</u>, 60 F.Supp.2d 935 (D. Minn. 1999).  Accordingly, Plaintiff's Partial Motion for Summary Judgment must be denied, and the entry of Summary Judgment in favor of Sherman is proper.

**C.    <u>Sherman did not misrepresent the status of the debt.</u>**

Plaintiff is flatly wrong in his self-serving allegation that Sherman violated the FDCPA for making false representations in an attempt to collect a debt.  Plaintiff cites 15 U.S.C. § 1692e, which provides that a debt collector may not use any false representation in connection with the collection of any debt.  Specifically, Plaintiff claims that Sherman incorrectly reported Plaintiff's debt as "open" and altered the length of time with which the account would remain on Plaintiff's

credit report.  However, Plaintiff's Exhibit G reveals that Sherman reported the account as an "Open … Collection Account."  This shows that the account was an open collection account from the standpoint that the account had been placed with collection agencies.  Plaintiff makes the incredulous argument that this statement was misleading because it may have appeared to some that credit had been extended to him.  However, Plaintiff's argument  fails because even if Plaintiff's theory was plausible, the appearance that an entity extended Plaintiff credit, would be favorable to Plaintiff considering his inability to obtain credit.

### D.    Defendant Sherman reported the debt as "disputed" within a reasonable time.

Plaintiff also alleges that Defendant Sherman violated § 1692e by failing to communicate to Equifax that Plaintiff's debt was disputed.  After becoming aware that the debt was disputed and after reasonable investigation, Defendant Sherman communicated that the account was disputed to the credit bureaus. (Branigan Aff., ¶7)  Contrary to Plaintiff's assertions, Defendant Sherman indeed took action and reported the debt to Equifax as disputed on or about October 21, 2004.  There is no timeframe or deadline by which a furnisher must report a debt as disputed, rather it must be done within a "reasonable amount of time."   Defendant Sherman acted in a reasonable amount of time.


## V.    PLAINTIFF INCORRECTLY CALCULATES DAMAGES, AS THE FDCPA ONLY ALLOWS UP TO $1,000 PER ACTION, NOT PER VIOLATION.

Contrary to what is permitted by statute, Plaintiff is attempting to recover $1,000 per alleged violation of the FDCPA.  However, § 1692k(a)(2)(A) states that a plaintiff may only recover up to $1,000 for any *action*, not per violation.  Thus, Plaintiff at the very most, is entitled to no more than $1,000 if it is found that Sherman violated the FDCPA.

The FDCPA provides, in pertinent part:

**(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of —**

(1) any actual damages sustained by such person as a result of such failure;

(2)(A) *in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1000...*

15 U.S.C. § 1692k(a) [emphasis added].  The rules of statutory construction require the court to consider the plain language of the statute.  Baum v. Madigan, 979 F.2d 438, 441 (6th Cir. 1992). The plain language of the act clearly indicates that plaintiff is limited to $1,000 per proceeding.

Two (2) circuit courts have weighed in on this issue, and both have concluded that based on the plain language of the statute, a plaintiff is not entitled to $1,000 per violation, but rather only up to $1,000 per proceeding.  See Wright v. Finance Services of Norwalk, Inc., 22 F.3d 647 (6th Cir. 1994) (plaintiff was limited to recovery of $1,000 per proceeding, rather than $1,000 per violation of the Act); Harper v. Better Business Services, Inc., 961 F.2d 1561 (11th Cir. 1992). Therefore, even if Plaintiff is able to prove his case (after discovery), the most he could recover under the FDCPA is $1,000.00.

## CONCLUSION

Because discovery has not yet commenced, and Plaintiff has failed to prove that Sherman violated the FCRA and/or the FDCPA, Sherman respectfully requests that this court deny Plaintiff's partial summary judgment in its entirety.  Conversely, Sherman requests that the Court enter Summary Judgment in its favor on each of the Plaintiff's claims for violations of the FDCPA and FCRA.

Respectfully submitted,

SHERMAN ACQUISITION LIMITED
PARTNERSHIP,
By its Attorneys,

RIEMER & BRAUNSTEIN LLP,

Dated: March 25, 2005

Steffani Jill Boudreau
BBO No. 564967
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108
(617) 523-9000

883499.1

16