IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STEVEN GAUDETTE,

             Plaintiff,

v.

ALEGIS GROUP LIMITED
PARTNERSHIP AND SHERMAN
ACQUISITION LIMITED
PARTNERSHIP,

             Defendants

Civil Action No. CV04-12645 JLT

**SPECIAL AFFIDAVIT OF COUNSEL
FOR SHERMAN ACQUISITION
AUTHENTICATING DOCUMENTS**

I, Steffani Jill Boudreau, do on oath, hereby depose and state as follows:

1.      My name is Steffani Jill Boudreau and I am a junior partner at the law firm of Riemer & Braunstein LLP, counsel to the Defendants in the above-captioned matter.

2.      Annexed hereto at Tab 1 and 2 are true and accurate copies of each Court decision or other document cited by the Defendant in its Opposition which may not be found in the local Reporters.

3.      The Plaintiff and Defendants have each served discovery on the other, and responses are not yet due.

Signed this _25_ day of March, 2005 under the penalties of perjury.

_____
Steffani Jill Boudreau

883503.1

**TAB 1**

# UNITED STATES DISTRICT COURT
## District of Minnesota

GLEN M. HAROLD and
KATHRYN G. WARD,

Plaintiffs,

vs.

BANK OF AMERICA d/b/a
BANK OF AMERICA MORTGAGE,

Defendant.

**ORDER**
Civil File No. 02-CV-1844 (MJD/JGL)

Richard Sundberg, for, and on behalf of, the Plaintiffs.

Lorie A. Klien, Moss & Barnett, PA, for, and on behalf of, the Defendant.

## I. INTRODUCTION

This matter comes before the Court on the defendant's, Bank of America ("Bank"),
Motion for Summary Judgment.   The plaintiffs, Glen Harold and Kathryn Ward
(Collectively "Plaintiffs") filed an amended complaint alleging that the Bank violated the
Fair Credit Reporting Act ("FCRA"), 15 U.S.C.§ 1681s-2(b)(2).   The Court heard oral
arguments on December 19, 2003.

1

## II. FACTUAL BACKGROUND

The factual background is, for the most part, unchallenged. Plaintiffs were parties to a mortgage and mortgage note ("Note") in favor of the bank. Pursuant to the terms of the Note, Plaintiffs were to pay principal, interest, and an escrow amount on the first day of each month until the note was paid in full. For the months of January 2001 through July 2001, Plaintiffs' monthly payment owed to the Bank was $891.83. In May of 2001 an escrow analysis was performed; as a result of the analysis, the Plaintiffs monthly payments were increased to $975.36. The increase was to take effect on August 1, 2001. Also, the Plaintiffs were informed that their escrow account was short $198.90. Plaintiffs were given the option of paying the $198.90 shortfall within ten days of receiving the escrow analysis or paying $66.30 per month for three months beginning with the August 1, 2001 payment. The Plaintiffs received the statement of escrow prior to August 1, 2001.

Plaintiffs made the August 1, 2001 payment for $891.83, not the $975.36 due. By letter dated August 21, 2001, the Bank informed Plaintiffs that $85.53 remained due on the August 2001 payment. That letter also stated: "Please be informed that if your payment is received more than 30 days after the due date, your loan may be reported to credit bureaus . . . ." Seven days later, by letter dated August 28, 2001, Defendant informed Plaintiffs it was reversing Plaintiffs' payment of $891.83 because "it was less than the total due to reinstate your loan to current status." Plaintiffs made the payment of $975.36 in September 2001. The Bank subsequently reported the August 2001 payment as 30 days

delinquent.

On April 30, 2002, the Plaintiffs called the Bank and spoke to a customer service supervisor, Carol A. Kelly. Plaintiffs requested that the delinquency notation be removed from Plaintiffs' consumer credit reports. Ms. Kelly informed the caller that the reported delinquency was not a bank. Ms. Kelly, however, after reviewing plaintiffs' account payment history, agreed to send a notice to credit reporting agencies that the account was not delinquent.

Plaintiffs subsequently commenced this action alleging that the Defendant "was negligent in failing to comply with the requirements imposed under the Fair Credit Reporting Act." (Am. Compl. at 4).

The Plaintiffs offer two statements that are disputed facts for the purpose of defeating summary judgment. Those disputed facts are reprinted below:

1.      In the second paragraph on page 3 of Defendant's Memorandum, Defendant admits that Defendant's employee, in a phone conversation with one of the Plaintiffs on April 30, 2002, agreed that: ' . . . after reviewing Plaintiffs' account payment history, Ms. Kelly agreed, as courtesy to Plaintiffs, to send a notice to credit reporting agencies that the account was not delinquent. However, Defendant's Memorandum is silent as to why this was never done until August 23, 2002, with respect to the Trans Union; August 19, 2002 with respect to Experian; and August 19, 2002, with respect to CSC Credit Service; all of the relevant credit reporting agencies."

2.      In his Affidavit, paragraph 7, plaintiff Harold, specifically documents that on June 10, 2002 he made applications to Experian for credit 'Reinvestigation' pursuant to the Fair Credit Reporting Act. As will be explained below, Defendant had a specific statutory duty to

respond to Experian within 30 days. Defendant's Memorandum is totally silent upon why Defendant did not notify Experian of the correction until August 19, 2002. Presumably, Defendant's response to Experian, and the other agencies in August, was in response to subsequent applications made by the Plaintiffs in June and/or July, 2002 as mentioned in paragraph 8 of his Affidavit.

(Pl. Mem. in Opp'n at 1-2).

## III. STANDARD OF REVIEW

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp., v. Catrett, 477 U.S. 317 (1986). The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celeotex Corp., 477 U.S. at 322. The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Vette Co.v. Aetna Casualty & Surety Co., 612 F.2d 1076, 1077 (8th Cir. 1980). The nonmoving party, however, may not merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

## IV. DISCUSSION

Plaintiffs assert that they bring their claim under 15 U.S.C. § 1681s-2(b)(2). (Pl. Mem. in Opp'n at 2). That provision states,

> A person shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the person to a consumer reporting agency, before the expiration of the period under section 1681i(a)(1) of this title within which the consumer reporting agency is required to complete actions required by that section regarding that information.

15 U.S.C. § 1681s-2(b)(2). This statute triggers a thirty day (30) clock for furnishers of information, such as the Bank, to investigate and respond to a consumer's dispute. See 15 U.S.C. § 1681(a)(1) (allotting a thirty day period for consumer reporting agencies to complete investigations). The furnishers of information, however, are not bound to this thirty (30) day deadline until they have received notice from the credit reporting agency of the consumer's dispute. See 15 U.S.C. § 1681s-2(b)(1) (*[A]fter* receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall . . . .") (emphasis added).

Accordingly, in order to survive summary judgment, the Plaintiffs must show that they contacted the consumer reporting agency to report a dispute. 15 U.S.C. § 1681i (a)(1)(a). Next, the Plaintiffs must show that the furnisher of information was properly notified by the consumer reporting agency. 15 U.S.C. § 1681i(a)(2)(a). Finally, and most importantly to this claim, the Plaintiffs must show that there is a genuine issue of material fact as to the whether furnisher of information failed to comply with the thirty (30) day time period provided by law for investigation and response of their dispute. 15 U.S.C. § 1681s-

2(b)(2).

The Bank first argues summary judgment is appropriate because the "[p]laintiffs did not plead a cause of action under Section 1681s-2b." (Def.'s Reply Mem. at 4).

The Federal Rules of Civil Procedure require that pleadings contain " a short plain statement of the claim showing that the pleader is entitled to relief." Fed. Civ. P. 8(a). A complaint, however, is not defunct because it does not identify the correct statutory section so long as it pleads facts that state a claim under the correct statute. Phillips v. Grendahl, 312 F.3d. 357, 364 (8th Cir. 2002). Accordingly, summary judgment is not appropriate on the grounds that the Plaintiffs did not plead the proper statute.

Because the complaint alleges a violation of a statutory deadline, 15 U.S.C. § 1681s2(b)(2), it follows that the Plaintiffs must show that there are fact questions concerning the dates of actions taken by the Bank once proper notice was provided. Accordingly, the Court examines the record for a material fact that could lead a trier of fact to conclude that the Bank violated the deadlines.

The two disputed facts that the Plaintiffs present do not substantiate a claim under 15 U.S.C. § 1681s-2(b)(2). The first disputed fact that the Plaintiffs put forth does not help their claim under this provision because it clearly states that the Plaintiffs contacted the furnisher of information, the Bank in this case, and not the consumer reporting agency as required by law. 15 U.S.C. § 1681i(a)(1) (requiring, the consumer to notify the consumer reporting agency directly of any dispute relating to the consumer's file); Thom v. United

<u>States</u>, 283 F.3d 939, 943 (8th Cir. 2002) (stating, "If the statutory language is unambiguous, and there is no clear congressional intent to the contrary, we must regard that statutory language as conclusive"). The Bank had no obligation to begin an investigation until it was notified by the consumer reporting agency of a dispute. <u>See</u> 15 U.S.C. § 1681s-2(b)(1). Accordingly, it can not be said that the Bank violated the statutory time line because it was not obliged to follow that time line until it was notified of the dispute by a consumer reporting agency, not by the Plaintiffs.

The second disputed fact as put forth by the Plaintiff is also insufficient to survive summary judgment. Although the Plaintiffs' second disputed fact avers that it contacted the consumer reporting agencies and notified them of the dispute, it does not put forth any fact question as to whether the consumer reporting agency properly notified the Bank of the dispute. Again, the language of the statute controls. The plain language of the statute states, "*After* receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall . . . ." 15 U.S.C. § 1681s-2(b)(1) (emphasis added); <u>Young v. Equifax Credit Info Svcs. Inc.</u>, 294 F.3d 631, 639 (5th Cir. 2003) ("Such notice is necessary to trigger the furnisher's duties under Section 1681s-2(b)."). The Court concludes that the Bank's duty to investigate within the statutory period was conditioned on the proper notice from the consumer reporting agency; the Plaintiffs' claims fail as a matter of law because they have failed to put forth evidence that the consumer reporting

agencies notified the Bank of the dispute. Accordingly, summary judgment in favor of the defendants is appropriate.

The Court declines subject matter jurisdiction on the remaining claims brought pursuant to state law.

**IT IS HEREBY ORDERED**:

1.    Defendant's Motion for Summary Judgment [Docket No. 28] is **GRANTED**.

2.    Plaintiffs' Fair Credit Report Act claims are **DISMISSED WITH PREJUDICE**.

3.    Plaintiffs' state law claims are **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 12, 2004                    /s/ Michael J. Davis
                                        Judge Michael J. Davis
                                        United States District Court

**TAB 2**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Bradley Malm,

      Plaintiff,

    v.

Household Bank (SB), N.A., Sherman
Financial Group LLC d/b/a Sherman
Acquisitions, Trans Union LLC, and Experian
Information Solutions, Inc.,

      Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 03-4340 ADM/AJB

---

John H. Goolsby, Consumer Justice Center, P.A., Little Canada, MN, appeared for and on behalf
of Plaintiff.

Michael S. Poncin, Esq., Moss & Barnett, Minneapolis, MN, appeared for and on behalf of
Defendant Sherman Financial Group LLC d/b/a Sherman Acquisitions.

---

## I. INTRODUCTION

Defendant Sherman Financial Group LLC's ("Sherman") Motion to Dismiss or

Alternatively for Summary Judgment [Docket No. 32] was argued before the undersigned United

States District Judge on April 30, 2004. Plaintiff Bradley Malm ("Plaintiff") asserts claims

under the Fair Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act

("FCRA"), and additionally maintains a claim for credit defamation. For the reasons explained

below, Sherman's Motion is denied in part and granted in part.

## II. BACKGROUND

This lawsuit resulted from Plaintiff's attempt to correct a mistake in his credit report.[1]  In January 1995, Plaintiff's wife, Cheryl Malm, opened a joint Best Buy credit card account in both her own and Plaintiff's names.  See Corrected Am. Compl. ¶ 7 [Docket No. 26].[2]  Ms. Malm apparently signed Plaintiff's name on the credit card application without his consent or knowledge, and Plaintiff never saw a copy of the application until after initiating litigation.  See Malm Aff. ¶ 6; see also Expert Report of Karen S. Runyon at 3 (Goolsby Aff. Ex. B).  The credit card bills were addressed to Cheryl Malm only.  See Best Buy credit card bill of 6/23/99 (Corrected Am. Compl. Ex. 1).  Defendant Household Bank ("Household") financed the Best Buy card.  Corrected Am. Compl. ¶ 7.

Plaintiff and Cheryl Malm divorced in July 1996.  Corrected Am. Compl. ¶ 9.  Plaintiff learned of the Best Buy card's existence in April 1998 after he tried to obtain a motorcycle loan.  Id. ¶ 10.  Ms. Malm had failed to make payments on the card, and the Household account tradeline was listed on Plaintiff's credit report under the "Adverse Account Information" section.  See Trans Union Credit Report of 03/31/03 (Goolsby Aff. Ex. J).  Both Plaintiff and his ex-wife informed Household that Plaintiff should not be listed on the account.  See Household collection notes at 04/09/98 entry, 10/10/00 entry (Goolsby Aff. Ex. C).  Plaintiff also contacted Best Buy

---

[1]  For purposes of the instant Motion, the facts are viewed in the light most favorable to Plaintiff, the nonmoving party  See Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

[2]  Plaintiff filed two pleadings labeled "Amended Complaint with Jury Trial Demand" in this case.  See Am. Compl. [Docket No. 25]; Corrected Am. Compl. [Docket No. 26].  Nothing in the Federal Rules of Procedure or the Local Rules allows parties to amend pleadings in this manner, and this mode of altering the Complaint should not be attempted again.  However, for the purposes of this Motion, the Court adopts the "Corrected Amended Complaint" nomenclature and recognizes the pleading at Docket Number 26 as the operative complaint.

about the mistake, but was told that the Household account would remain on his credit report

until either he or his ex-wife paid the balance due. Corrected Am. Compl. ¶ 11.

In March 2000, Plaintiff obtained a copy of his credit report and noticed that the

Household account tradeline was absent. Id. ¶ 12. Consequently, he believed that his ex-wife

had paid off the account. Instead, the debt had been discharged as the result of Cheryl Malm

filing for Chapter 7 bankruptcy during this period. Id. ¶¶ 12-13.

Credit agencies began contacting Plaintiff about the Household account starting in

October 2000, and he contested the debt with them. Id. ¶¶ 14-15. Sherman acquired the Best

Buy credit card debt from Household on November 20, 2000. Id. ¶ 15; Sherman collection notes

(Goolsby Aff. Ex. D). Plaintiff disputed his responsibility for the account with Sherman on

several occasions, and requested a copy of the Best Buy credit card application multiple times.[3]

See Malm Aff. ¶¶ 1-4, 6; Letter from Malm to Scott of 07/30/01 (Corrected Am. Compl. Ex. 2).

In July 2002, Plaintiff also contested the Best Buy debt with Receivables Management Solutions

("RMS"), a collection agency that attempted to recover the account for Sherman. Malm Aff. ¶ 5;

Letter from Malm to Dunham of 07/22/02 (Malm Aff. Ex. A). He asked RMS for a copy of the

Best Buy application but never received one. Id.

In November 2002, Plaintiff disputed the Household and Sherman tradelines on his credit

report with Defendant Trans Union LLC ("Trans Union") and other credit reporting agencies.

See Request for Investigation Form (Rossman Aff. Ex. 1). In response, Trans Union sent

Sherman a Consumer Dispute Verification Form ("CDV"). See CDV Form (Rossman Aff. Ex.

---

[3] The parties disagree whether Plaintiff disputed the Best Buy debt directly with
Sherman. However, the Court views the facts in Plaintiff's favor because he is the non-moving
party. See Ludwig, 54 F.3d at 470.

2). Part one of the CDV requires Sherman to "[c]heck the corresponding **Same** box for each item that is identical to your records." Id. (emphasis in original). It explains additionally, "[i]f any of this information on the left is incorrect, write the corrections in the boxes on the right." The information to be verified includes Plaintiff's name, current and previous addresses, social security number and date of birth. Under the "Consumer States/Comments" section, the CDV says "Not his/hers," and states further "Provide complete ID." Id. Sherman completed the CDV and confirmed that the data about Plaintiff matched Sherman's records. Id.

The Household and Sherman tradelines remained on Plaintiff's credit reports through the spring of 2003, and Plaintiff continued to request their removal. Trans Union Credit Report of 03/31/03 (Goolsby Aff. Ex. J). Defendant Experian Information Solutions, Inc. ("Experian") removed the Sherman tradeline in April 2003, and Trans Union deleted it in June 2003. Experian Correction Summary (Corrected Am. Compl. Ex 8); Corrected Am. Compl. ¶¶ 25-26. Plaintiff initiated litigation on July 29, 2003.

Sherman made Plaintiff an offer of judgment ("Offer") under Rule 68 on November 6, 2003, offering to pay Plaintiff $1001, plus attorney fees and costs for Plaintiff's FDCPA claim, if Plaintiff dismissed all of its claims against Sherman. Sherman Offer of Judgment of 11/06/03 ¶¶ 1-3 (Rossman Aff. Ex. 3). Plaintiff did not respond to Sherman's offer, and Sherman subsequently filed the present Motion.

### III. DISCUSSION

Sherman now moves for dismissal, or alternatively, for summary judgment. Because both Sherman and Plaintiff rely on materials outside of the pleadings, the Court treats this motion as one for summary judgment. See Fed. R. Civ. P. 12(b).

4

A.    **Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

B.    **Plaintiff's FDCPA Claim**

Sherman argues that Plaintiff's FDCPA action fails as a matter of law because Plaintiff rejected its Rule 68 Offer of November 2003, which Sherman contends would have mooted the FDCPA claim. In Sherman's view, Plaintiff had no stake remaining in the FDCPA claim and the Court lacked subject matter jurisdiction over the matter. Plaintiff asserts that the Offer did not moot the FDCPA action because it required him to dismiss all of his claims against Sherman, but limited compensation to the FDCPA claim.

Rule 68 authorizes a defendant to make an offer of judgment to an adverse party allowing the court to enter judgment in the plaintiff's favor. See Fed. R. Civ. P. 68. While not specified in Rule 68, "many courts have held that a valid offer of judgment that would satisfy a plaintiff's entire claim for relief eliminates the controversy between the parties and leaves nothing for the

court to resolve, effectively mooting the action and removing jurisdiction." Jones v. CBE

Group, Inc., 215 F.R.D. 558, 562 (D. Minn. 2003) (Doty, J.); see also Rand v. Monsanto Co.,

926 F.2d 596, 598 (7th Cir. 1991); Zimmerman v. Bell, 800 F.2d 386, 390 (4th Cir. 1986);

Abrams v. Interco Inc., 719 F.2d 23, 32-34 (2d Cir. 1983).  Because there is no actual case or

controversy to adjudicate, courts lack subject matter jurisdiction over claims mooted by Rule 68

offers of judgment, where the plaintiff no longer has an interest in the litigation.  See U.S. Const.

Art. III

§ 2 (limiting judicial power to cases or controversies); United States Parole Comm'n v.

Geraghty, 445 U.S. 388, 395 (1980) (holding same); Powell v. McCormack, 395 U.S. 486, 496

(1969) (deeming an action moot when a party no longer has a stake in the matter).

 Sherman's Rule 68 Offer did not render Plaintiff's FDCPA claim moot under this

standard.  Sherman correctly states that its Offer of $1001, plus attorney fees and costs for

Plaintiff's FDCPA claim, constitutes the maximum statutory recovery for violations of the

FDCPA.  See 15 U.S.C. § 1692k; Offer ¶¶ 1-2.  Consequently, Sherman's Offer would have

mooted Plaintiff's FDCPA claim had it required dismissal of that claim only.  See Jones, 215

F.R.D. at 562.  However, acceptance of the offer required Plaintiff to dismiss all of his claims,

including those asserted under FCRA and state law.  See Offer ¶¶ 1, 3.  Sherman's Offer did not

render the FDCPA claim moot because it did not satisfy Plaintiff's entire claim.  Therefore,

dismissal of Plaintiff's FDCPA claim is not warranted.

 Sherman also argues that the statute of limitations bars Plaintiff's FDCPA claim.

FDCPA actions must be filed within one year of an alleged violation.  See 15 U.S.C. § 1692k.

Plaintiff filed his initial Complaint on July 29, 2003, and filed the Amended Complaint on

6

November 21, 2003, adding his FDCPA claim. See Compl. at 1[Docket No. 1]; Am. Compl. at 1

[Docket No. 25]. Thus, the allegedly unlawful activity underlying Plaintiff's FDCPA claim must

have occurred on or after July 29, 2002, given the one year statute of limitations period. See 15

U.S.C. § 1692k.

Based on the allegations in the Corrected Amended Complaint, the statute of limitations

does not prohibit Plaintiff's FDCPA claim. Sherman stresses that according to the Corrected

Amended Complaint, Sherman "continued its illegal collection campaign until August 2001,"

and that these activities form the basis of Plaintiff's FDCPA claim. See Corrected Am. Compl.

¶ 17. Thus, in Sherman's view, Plaintiff should have filed his FDCPA claim by August 2002.

However, the Corrected Amended Complaint states that Sherman's "fail[ure] to report the

Plaintiff's dispute to the credit reporting agencies" constitutes the FDCPA violation, and that this

behavior continued through March 2003. See id. ¶ 18. Because Plaintiff asserted his FDCPA

claim before March 2004, it is not time-barred. See 15 U.S.C. § 1692k. Therefore, Sherman's

Motion for Summary Judgment is denied as to Plaintiff's FDCPA claim.

**B.    Plaintiff's FCRA Claim**

Sherman also moves for summary judgment on Plaintiff's claim for violation of the

FCRA, arguing that it complied with the FCRA's requirements. Under the FCRA, entities that

furnish information to consumer reporting agencies, called furnishers, must investigate disputed

accounts after receiving notice from consumer reporting agencies. See 15 U.S.C. § 1681s-

2(b)(1). Upon being given notice as described in § 1681i(2)(A), furnishers must: (1) investigate

the disputed information; (2) review all relevant information provided by the consumer reporting

agency; (3) report the results of the investigation to the consumer reporting agency; and (4)

report conclusions that the information was incomplete or inaccurate to other consumer reporting agencies to which the furnishers provided information. Id. While the FCRA does not specify the type of investigation required, courts presented with this issue have held that § 1681s-2(b)(1) compels furnishers "to conduct a reasonable investigation of their records to determine whether the disputed information can be verified." Johnson v. MBNA Am. Bank, N.A., 357 F.3d 426, 431 (4th Cir. 2004); see also Olwell v. Med. Info. Bureau, No. Civ. 01-1481, 2003 WL 79035, at *5 (D. Minn. Jan. 7, 2003) (Tunheim, J.). To meet this standard, furnishers may need to consult underlying documents such as account applications, rather than simply reviewing data in computerized customer information systems. Johnson, 357 F.3d at 431.

Plaintiff argues that the question of whether Sherman's investigative procedures were reasonable creates issues of fact best left to the jury. He also asserts that Sherman should have reviewed a copy of the credit card application to determine if the account actually belonged to Plaintiff. However, § 1681s-2(b) does not require furnishers to investigate disputes until they receive notice from a consumer reporting agency. See 15 U.S.C. §§ 1681i(a)(2)(A), 1681s-2(b)(1). Therefore, the Court must first decide whether Sherman received sufficient notice from Trans Union before analyzing the reasonableness of Sherman's investigation.

The CDV form Trans Union sent to Sherman does not identify the basis of Plaintiff's dispute concerning the Best Buy card. The instructions on the CDV ask Sherman to verify Plaintiff's name, address, previous address, social security number and birth date, and to confirm other basic account information. See CDV form. Additionally, the CDV form states "Not his/hers. Provide complete ID," in a box labeled "Consumer States/Comments." Id. The CDV form does not specify that Plaintiff believed the account belonged to his ex-wife only, or that she

8

forged his signature to open it.  Consequently, unlike the furnisher in <u>Johnson</u> who received specific notice about the consumer's dispute, Sherman was not given a complete explanation of Plaintiff's concerns.  <u>See</u> <u>Johnson</u>, 357 F.3d at 429 (holding that furnisher received notice of the specific dispute from statements "Consumer states belongs to husband only" and "Was never a signer on account.  Was an authorized user").  Sherman merely learned that Plaintiff disputed the account in some way, and that Trans Union requested confirmation of Plaintiff's background data.

Sherman's investigation under § 1681s-2(b) was reasonable given the cursory notice it received concerning Plaintiff's dispute.  Following the instructions on the CDV form, Sherman verified that Plaintiff's personal information matched its records, and updated the account balance.  <u>See</u> CDV form.  Sherman apparently did not review the actual application.  The cryptic "Not his/hers" did not notify Sherman that additional inquiry was necessary.  <u>Id.</u>  While specific notice of Plaintiff's concerns could have compelled Sherman to conduct a more thorough review, thus creating an issue of "reasonableness" for the jury, a more rigorous investigation was not required here based on the superficial notice that Trans Union provided.  <u>See</u> 15 U.S.C. § 1681s-2(b)(1); <u>Johnson</u>, 357 F.3d at 431 (holding that § 1681s-2(b)(1) requires furnishers to investigate disputes only after receiving adequate notice); <u>Young v. Equifax Credit Info. Servs., Inc.</u>, 294 F.3d 631, 640-41 (5th Cir. 2002) (holding same).  Therefore, summary judgment is granted on Plaintiff's FCRA claim.

**C.    Plaintiff's Credit Defamation Claim**

Finally, Sherman moves for dismissal of Plaintiff's state law claim for credit defamation, arguing that the FCRA preempts this cause of action.  The preemption doctrine, derived from the

9

Supremacy Clause of the United States Constitution,[4] "may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." Fidelity Fed. Sav. & Loan Ass'n v. De la Cuesta, 458 U.S. 141, 152-53 (1982) (internal quotation omitted).

The FCRA contains two seemingly overlapping sections that restrict state law claims against furnishers. FCRA's original preemption section, § 1681h(e), limits liability for defamation, invasion of privacy, and negligence to instances where "false information [was] furnished with malice or willful intent to injure . . . [the] consumer." 15 U.S.C. § 1681h(e). Thus, plaintiffs who show that information was provided with "knowledge that it was false or with reckless disregard of whether it was false or not" may bring claims under § 1681h(e). See Thornton v. Equifax, Inc., 619 F.2d 700, 705 (8th Cir. 1980). Congress added a second preemption provision in 1996, which states that "[n]o requirement or prohibition may be imposed under the laws of any State with respect to any subject matter regulated under . . . section 1681s-2[5] of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." 15 U.S.C. § 1681t(b)(1)(F), Pub. L. No. 104-208, § 2419, 110 Stat. 3009-452 (1996). The terms of this second preemption section are absolute. Id.

While no circuit court has addressed the issue, numerous district courts have attempted to reconcile these two apparently conflicting sections. See McCloud v. Homeside Lending, 309 F.

---

[4] Article VI states that federal law "shall be the supreme Law of the Land . . . ." U.S. Const., art. VI, cl. 2.

[5] As outlined above, § 1681s-2(b) requires furnishers to investigate disputed consumer account information upon receiving notice from a consumer reporting agency. See 15 U.S.C. § 1681s-2(b). Under § 1681s-2(a), furnishers must provide accurate information and may not continue furnishing data after being notified of its inaccuracy. See 15 U.S.C. § 1681s-2(a).

Supp. 2d 1335, 1340-42 (N. D. Ala. 2004); <u>Jeffrey v. Trans Union, L.L.C.</u>, 273 F. Supp. 2d 725,

726-28 (E.D. Va. 2003); <u>Mattice v.Equifax</u>, Civil No. 03-1060, 2003 WL 21391679, at *1-*4 (D.

Minn. June 13, 2003) (Kyle, J.); <u>Gordon v. Greenpoint Credit</u>, 266 F. Supp. 2d 1007, 1012-13

(S.D. Iowa 2003); <u>Yutelser v. Sears Roebuck & Co.</u>, 263 F. Supp. 2d 1209, 1211-12 (D. Minn.

2003) (Frank, J.); <u>Aklagi v. NationsCredit Fin. Servs. Corp.</u>, 196 F. Supp. 2d 1186, 1194-96 (D.

Kan. 2002); <u>Hasvold v. First USA Bank</u>, 194 F. Supp. 2d 1228, 1239 (D. Wyo. 2002); <u>Jaramillo</u>

<u>v. Experian Info. Solutions, Inc.</u>, 155 F. Supp. 2d 356, 362-63 (E.D. Pa. 2001) (reconsideration

granted in part).  These courts have reached three different results.  First, some have held that

§ 1681t(b)(1)(F) completely subsumes § 1681h(e) because it provides absolute preemption and

was added after § 1681h(e).  <u>See Hasvold</u>, 194 F. Supp. 2d at 1239; <u>Jaramillo</u>, 155 F. Supp. at

363.  However, this interpretation voids § 1681h(e), and thus contradicts the general mandate

that courts should consider statutes as a whole to avoid nullifying specific provisions.  <u>See</u>

<u>United States v. Campos-Serrano</u>, 404 U.S. 293, 301 n.14 (1971); <u>State Highway Comm'n v.</u>

<u>Volpe</u>, 479 F.2d 1099, 1111-12 (8th Cir. 1973) (stating that courts should look to the whole

statute when interpreting a particular section).  Consequently, the Court declines to adopt this

approach.

 Other district courts have determined that § 1681t(b)(1)(F) does not preempt common

law tort claims, but have reached this conclusion for two different reasons.  One group

concluded that § 1681t(b)(1)(F) applies to state statutes only, and that § 1681h(e) pertains to

common law torts.  <u>See McCloud</u>, 309 F. Supp. 2d at 1341-42; <u>Jeffrey</u>, 273 F. Supp. 2d at 726-

28.  Another group decided that § 1681h(e), as a specific preemption clause, trumps the more

general language of

11

§ 1681t(b)(1)(F).  Gordon, 266 F. Supp. 2d at 1012-13; Yutelser, 263 F. Supp. 2d at 1211-12.

Under either rationale, plaintiffs who overcome § 1681h(e)'s malice/willful intent standard may

pursue common law actions.  Id.; see also McCloud, 309 F. Supp. 2d at 1341-42; Jeffrey, 273 F.

Supp. 2d at 726-28.  These views are somewhat strained, however, because § 1681t(b)(1)(F)

does not specify that it relates to statutes only.  See 15 U.S.C. § 1681t(b)(1)(F).  Further, as these

interpretations greatly minimize § 1681t(b)(1)(F)'s applicability, they run afoul of the "whole

statute" approach outlined above, and thus will not be followed by the Court.  See Campos-

Serrano, 404 U.S. at 301 n.14; Volpe, 479 F.2d at 1111-12.

Finally, some courts have applied a temporal formula to FCRA's preemption sections

based on § 1681t(b)(1)(F)'s absolute immunity for "any matter regulated by section 1681s-2 . . .

relating to the responsibilities of [furnishers] . . . ."  15 U.S.C. § 1681t(b)(1)(F); see Mattice,

2003 WL 21391679, at *1-*4; Aklagi, 196 F. Supp. 2d at 1194-96.  Under this rationale,

§ 1681t(b)(1)(F) preempts any state law claims based on a furnisher's actions after receiving

notice of a dispute, because furnishers then have a duty to investigate under § 1681s-2.  See id.

However, § 1681h(e) governs preemption of state law claims premised on a furnisher's behavior

before receipt of notice, because at that point §1681s-2 is not implicated.  Id.; see also 15 U.S.C.

§ 1681h(e).  The Court finds the temporal approach the most convincing of these three options

because it follows the "whole statute" analysis and does not render either section superfluous.

Adoption of the temporal approach leads to the conclusion that § 1681t(b)(1)(F) preempts

Plaintiff's credit defamation action because Plaintiff bases his claim entirely on Sherman's

actions after it received notice of the disputed account.  Plaintiff alleges that Sherman continued

reporting the erroneous Best Buy account even after Plaintiff told them that the account was not

his.  See Corrected Am. Compl. ¶¶ 16-17, 19, 21; Letter from Malm to Scott of 07/30/01

(Corrected Am. Compl. Ex. 2); see also Malm. Aff. ¶¶ 1, 3-4.  Additionally, Plaintiff avers that

Sherman failed to send Plaintiff a copy of the card application despite his request, and that

Sherman conducted a superficial investigation of the disputed account after obtaining the CDV

form from Trans Union.  Corrected Am. Compl. ¶¶ 17, 21; see also Malm Aff. ¶¶ 2-3.  All of

these allegations involve Sherman's behavior after Plaintiff explained his concerns, at a time

when Sherman was required to comply with § 1681s-2's requirements.  Because § 1681t(b)(1)(F)

precludes imposition of any state law on matters regulated under § 1681s-2, the FCRA preempts

state tort actions premised on a furnisher's post-notice conduct.  See 15 U.S.C. § 1681t(b)(1)(F).

Therefore, Sherman's Motion for Summary Judgment is granted on Plaintiff's credit defamation

claim.[6]

---

[6]  Because § 1681t(b)(1)(F) preempts Plaintiff's credit defamation action, the Court need
not address his argument that § 1681h(e) does not preempt this claim.

### IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Sherman's Motion to Dismiss or Alternatively for Summary Judgment [Docket No. 32] is **DENIED** as to Plaintiff's FDCPA claim;

2. Defendant Sherman's Motion to Dismiss or Alternatively for Summary Judgment is **GRANTED** as to Plaintiff's FCRA and credit defamation claims;

3. Counts III and IV of Plaintiff's Corrected Amended Complaint [Docket No. 26] are **DISMISSED WITH PREJUDICE** as to Defendant Sherman.

BY THE COURT:

 s/Ann D. Montgomery
ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date:   July 7, 2004

14